IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **LEE HORROCKS,**<br><br>Plaintiff,<br><br>vs.<br><br>**ANDREW M. SAUL,**<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:20-CV-00170-DAK<br><br>Judge Dale A. Kimball |

### INTRODUCTION

This matter is before the court on Plaintiff's appeal of the Social Security Administration's denial of his claim for disability insurance benefits under Title II of the Social Security Act. (ECF No. 24.) This court has jurisdiction to review the final decision of the Commissioner of the Social Security Administration under the Social Security Act, 42 U.S.C. § 405(g). On January 19, 2021, the court held a hearing on Plaintiff's appeal. At the hearing, Dana W. Duncan represented the Plaintiff and Kathryn C. Bostwick represented the Defendant. The court took the matter under advisement. After carefully considering the parties' memoranda, arguments, the administrative record, and the facts and law relevant to Plaintiff's appeal, the court enters the following Memorandum Decision and Order.

### BACKGROUND

In December 2015, Plaintiff applied for disability insurance benefits. In his application, Plaintiff alleged disability beginning in August 2015 due to fainting, memory loss, headaches, and various other conditions. After an administrative hearing in November 2018, the Administrative Law Judge ("ALJ") found that Plaintiff was not disabled. The Appeals Council

1

subsequently denied Plaintiff's request for review. Plaintiff's appeal before this court followed the Appeals Council denial.

Plaintiff alleged disability beginning on August 15, 2015, when he reported a work-related exposure to hydrogen sulfide gas. After the exposure and Plaintiff's emergency treatment, Plaintiff was discharged as "good and stable," and told not to return to work for three days. Despite the initial stability, Plaintiff experienced several fainting spells and underwent further testing. Plaintiff's CT scan of his lungs, cardiac, and other testing all returned normal results. Thus, the doctors diagnosed Plaintiff with syncopal episodes.[1] Plaintiff experienced these syncopal episodes beginning in early October 2015.

Throughout 2015 and 2016, Plaintiff sought treatment from Rhonda McKenna, PA, for his shortness of breath, loss of consciousness, night sweats, rashes, and other symptoms. His physical examinations typically were unremarkable and PA McKenna referred him for more testing. After this referral, another doctor found that Plaintiff's syncopal episodes were not consistent with his normal test results and, therefore, the episodes were "most likely psychogenic in nature" and related to "malingering or stress response." This doctor advised Plaintiff to see a psychiatrist, reduce stress, and exercise. After more physicians' tests yielded normal results and failed to explain Plaintiff's syncopal episodes, Plaintiff attended counseling at Northeastern Counseling Center.

---

[1] Syncope is a "[p]artial or complete loss of consciousness with interruption of awareness of oneself and one's surroundings. When the loss of consciousness is temporary and there is spontaneous recovery, it is referred to as syncope or, in nonmedical quarters, fainting. Syncope is due to a temporary reduction in blood flow and therefore a shortage of oxygen to the brain. This leads to lightheadedness or a 'black out' episode, a loss of consciousness." Medical Definition of Syncope, MEDICINE.NET https://www.medicinenet.com/syncope/definition.htm

In January 2016, Heath D. Earl, Ph.D., conducted a neuropsychological evaluation of Plaintiff at PA McKenna's request. Dr. Earl found that Plaintiff's presentation of symptoms was "atypical" and that his "presented history holds incongruities . . . that call into question the veracity of medical etiologies for his condition." Specifically, Dr. Earl observed an episode where Plaintiff passed out by "flopp[ing] backward landing safely on the couch in a sitting position," transitioning "immediately from standing . . . to a backward flop that appeared motor driven." In short, Dr. Earl believed there was "objective evidence suggestive of disingenuous function or inappropriate test taking behavior" and ultimately diagnosed Plaintiff with malingering/factitious disorder and recommended that Plaintiff pursue cognitive therapy.

Plaintiff continued to seek treatment from PA McKenna through 2016 and 2017 for various issues like heartburn, memory problems, blood pressure, and anxiety. During these same years, Plaintiff received emergency treatment on two occasions for his syncope or seizures. First, in April 2016, Plaintiff received emergency treatment after a loss of consciousness; all of his test results were normal, and he was diagnosed with a syncopal episode, possible seizure, or pseudoseizure. Second, in November 2017, Plaintiff received emergency treatment for a possible seizure but his EEG testing did not show any seizure activity. During this episode, Plaintiff was diagnosed with conversion disorder with seizures or convulsions and dehydration and discharged with instructions to see a neurologist.

In February 2018, Dr. Lindsay Embree conducted a neuropsychological evaluation on Plaintiff. During this evaluation, Plaintiff reported significant difficulties with memory and cognitive function. Plaintiff also reported he was able to care for himself, cook for his family, was planning to start driving again, was able to "spend a lot of time . . . on welding projects," and enjoyed hunting and fishing in his free time. After this evaluation, Dr. Embree concluded

that Plaintiff's performance was "markedly below cutoff on a measure sensitive to effort and motivation and lower than would be expected even for individuals with more severe neurological conditions and cognitive impairment . . . Therefore, the test results are not considered an accurate reflection of [Plaintiff's] cognitive abilities."

In March 2018, Plaintiff saw PA McKenna. During this visit, Plaintiff reported he had not had a syncopal episode in eight months. His physical examination was unremarkable. PA McKenna also authored a letter after this visit stating that Plaintiff could not "work an 8-hour job."

### THE LEGAL STANDARD

To be found "disabled" under the Social Security Act, a plaintiff must establish their "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. 423(d)(1)(A). Under the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. 20 C.F.R. § 416.920.

At step one, the ALJ must determine whether the claimant is engaging in substantial gainful activity. *Id.* § 416.920(b). At step two, the ALJ must determine whether the claimant has a medically determinable impairment or combination of impairments that is severe. *Id.* § 416.920(c). At step three, the ALJ determines whether the claimant's impairment or combination of impairments is of a severity to meet, or be considered medically equal to, the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* § 416.920(d). Before considering step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). *Id.* § 416.920(e). An individual's RFC is their ability to do physical and mental work activities on a sustained basis despite limitations from their impairments. At step four, the ALJ

must determine whether the claimant has the RFC to perform the requirements of their past relevant work. *Id.* § 416.920(f). At the last step, the ALJ must determine whether the claimant is able to do any other work considering their RFC, age, education, and work experience. *Id.* § 416.920(g).

## **ALJ'S DECISION**

The ALJ analyzed Plaintiff's claim under the proper five-step process. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since August 5, 2015. At step two, the ALJ found that Plaintiff has medically determinable impairments that significantly limit Plaintiff's ability to perform basic work activities. Specifically, the ALJ found that Plaintiff has the following severe impairments: syncope/seizures, headaches, degenerative disk disease of the lumbar spine, and conversion disorder with mixed symptoms, persistent probable anxiety, depressive function, and generalized distress underlying the conversion.

At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets the requirements of 20 CFR Part 404, Subpart P, Appendix 1 for three relevant reasons. First, the ALJ found that Plaintiff's syncopal episodes do not meet the criteria because they are psychogenic in origin. Second, the ALJ found that Plaintiff only has moderate limitations as evidenced by his ability to perform basic daily activities, weld, hunt, and fish. Third, the ALJ found that Plaintiff's mental impairments do not meet the relevant criteria because these impairments do not so seriously limit Plaintiff so that he cannot perform tasks independently, appropriately, effectively, or on a sustained basis. The ALJ found that Plaintiff's conditions do not meet these criteria because: (1) regarding understanding, remembering, or applying information, Plaintiff only had moderate limitations as evidenced by his ability to perform basic daily living activities, cook, weld, hunt, and fish; (2) regarding interacting with

others, Plaintiff has only moderate limitations as evidenced by his close relationships with his family, visiting weekly with a friend, and his ability to get along well with authority figures; (3) regarding, concentrating, persisting, or maintaining pace, Plaintiff has only moderate limitations because Plaintiff can make crafts that involve welding, can cook, and underwent four hours of psychological testing; and (4) regarding adapting or managing oneself, Plaintiff has no limitation because Plaintiff was able to hunt, fish, weld, cook, and generally take care of himself.

As part of the third step, the ALJ decided Plaintiff's RFC, which is used at steps four and five. The ALJ found that Plaintiff has the RFC to perform light work as defined in 20 C.F.R. § 404.1567(c). This finding was based on the testimony and evidence presented during the administrative hearing. The ALJ prefaced this RFC finding by noting that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his symptoms] are not entirely consistent with the medical evidence and other evidence in the record." (ECF No. 20-3 at 16.) Specifically, the ALJ noted:

> [T]he record shows that many of the symptoms complained of by the claimant were noted prior to the relevant period. None of the extensive testing done since his alleged onset date has shown anything but largely normal findings. The claimant has had a brain MRI, sleep study, cardiac testing, seizure testing, and tilt table testing and all of it has been largely normal. Multiple providers have stated that his syncope/seizures and accompanying symptoms are psychogenic, not neurogenic in origin. This has led to extensive physiological testing. However, providers that have administered psychological testing have found it cannot be considered valid due to lack of effort and invalid responses. The record shows that the claimant has reported long periods of time without seizures, that he was able to cook for his pregnant wife, that he enjoys hunting and fishing in his spare time, and does welding for a hobby. Psychological testing showed that even with the questionable results, the claimant's verbal abstract reasoning, memory for contextualized verbal information, and judgment were all intact. . . Therefore, I find that the claimant's impairments are adequately addressed with the range of like work outlined above.

(ECF No. 20-3 at 17.) After making these findings, the ALJ turned to PA McKenna's opinion evidence that Plaintiff is unable to work.

The ALJ found that PA McKenna was not "considered an acceptable medical source" and that he gave her "opinions little weight" because her statements were "not supported by [her] treating notes, which generally show normal findings." (ECF No. 20-3 at 17.) The ALJ made these findings for three reasons. First, PA McKenna's findings about Plaintiff's function limitations are not supported by her own treating notes and the rest of the medical opinions in the record. Second, PA McKenna incorrectly stated that Plaintiff was healthy before the gas exposure. The record shows that Plaintiff had complained of chest pain, seizures, headaches, and syncope as early as 2009. Third, PA McKenna's statement that Plaintiff cannot work an 8-hour job is a legal conclusion (not medical) and, therefore, not given any weight.

At step four, the ALJ determined Plaintiff is unable to perform the past relevant work as a construction worker. Finally, at step five, the ALJ determined that, considering Plaintiff's age, education, work experience, and RFC, and in conjunction with the vocational expert's testimony, Plaintiff has the RFC to perform the requirements of several occupations such as sales attendant, food and beverage order clerk, and marker. The ALJ also noted that these jobs exist in significant numbers in the national economy. Thus, the ALJ concluded that "[a] finding of 'not disabled' [was] therefore appropriate." (ECF No. 20-3 at 21.)

## DISCUSSION

On judicial review, an ALJ's factual findings. . . 'shall be conclusive' if supported by 'substantial evidence.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019) (quoting 42 U.S.C. § 405(g)).

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means—and means

>only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Id.* at 1154 (internal citations and quotation marks omitted). With this standard of review in mind, the court will address whether the ALJ (A) reasonably discounted PA McKenna's opinions and (B) adequately explained how the work limitations accommodated Plaintiff's syncope and seizures.

**A. PA McKenna's Opinions**

PA McKenna authored several opinions on Plaintiff's behalf, which the ALJ discounted for various reasons. These opinions stated, among other things, that Plaintiff: "has a lot of issues with memory"; has a "hard time following or remembering basic instructions"; would have a hard time "carry[ing] out simple instructions given by an employer"; "has a hard time concentrating"; would have a hard time "obtain[ing] and keep[ing] a normal 8 hours day type of employment, as he is still passing out several times per month"; and that "[p]rior to his exposure, [Plaintiff] had been overall healthy." Plaintiff argues that these opinions were improperly weighted or rejected by the ALJ. Defendant argues that the ALJ correctly weighted PA McKenna's opinions and detailed his reasons for so doing. Additionally, Defendant avers that Plaintiff's appeal is no more than a request for the court to reweigh the evidence in a more favorable light in order to reach a different conclusion. The court agrees with Defendant.

The ALJ discussed PA McKenna's opinions in three groups. First, the ALJ gave little weight to PA McKenna's opinions about Plaintiffs difficulties with his memory, instruction following, interacting with others, concentrating, and adapting to new tasks because they are "not supported by [her] treating notes, which generally show normal findings" and "[t]hey are inconsistent with statements from the claimant and his wife, . . . that show the claimant is able to perform his activities of daily living." (ECF No. 20-3 at 17.) The ALJ then supports these

findings by listing the activities in which Plaintiff engages and citing to other provider's treating notes. (ECF No. 20-3 at 17–18.) Plaintiff contends that the ALJ's reliance on Plaintiff's daily activities was improper. Plaintiff is correct that an ALJ may not properly determine that a person is capable of engaging in substantial gainful activity based on "[t]he sporadic performance of household tasks." *See Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993) (citation omitted). That is not what happened here.

In this instance, the ALJ did not improperly use Plaintiff's daily activities to determine whether Plaintiff was capable of substantial gainful activity. First, the ALJ noted that Plaintiff engages in daily activities as well as hunting, fishing, welding, and was considering driving. These activities go beyond the sporadic performance of household tasks. Second, and more importantly, the ALJ's reliance on Plaintiff's daily activities was not to show that Plaintiff can engage in gainful activity but rather to show that PA McKenna's opinions are contradicted by Plaintiff's abilities and other provider's notes. In other words, the ALJ's reliance on Plaintiff's daily activities was used to evaluate PA McKenna's credibility and not to determine Plaintiff's capabilities. The ALJ determined Plaintiff's capabilities on the entirety of the record and not just those few activities. Thus, regarding PA McKenna's first opinion, Plaintiff has not shown that the ALJ's opinion was improper or does not meet the substantial evidence standard. *See Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988) ("Evidence is not substantial if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion." (citation omitted)).

Second, the ALJ rejected PA McKenna's statement that the claimant had been healthy prior to his exposure to hydrogen sulfide gas because, according to the ALJ, "the record from prior to the [Plaintiff's] alleged onset date shows he already had a number of these issues prior to

9

the relevant period." (ECF No. 20-3 at 18.) The ALJ then supports this finding by citing to the record where it shows that Plaintiff had complained of, been treated for, or diagnosed with hypertension, chest pain, seizures, syncope, and headaches prior to his exposure to the gas in 2015. (ECF No. 20-3 at 18.) The court is not convinced by Plaintiff's argument that the ALJ needs to expressly address whether these conditions worsened after the gas exposure. If Plaintiff had these conditions before 2015 and was able to engage in substantial gainful activity, it is reasonable for the ALJ to conclude that Plaintiff may now engage in some type of gainful activity. This is especially true because the ALJ questions the accuracy of Plaintiff's statements regarding the severity of Plaintiff's syncope. Accordingly, the court finds the ALJ met the substantial evidence standard in this instance because this ALJ's finding is not overwhelmed by other evidence and is not conclusory. *See Gossett,* 862 F.2d at 805.

    Lastly, the ALJ afforded no weight to PA McKenna's opinion that Plaintiff could not work an 8-hour job because the ALJ determined such an opinion was not medical, but legal. (ECF No. 20-3 at 18.) Plaintiff complains that the ALJ misstated the law regarding this opinion because PA McKenna's opinion was not a statement on the ultimate issue and, therefore, this opinion should be afforded some weight. It is, however, Plaintiff who misstates the law. According to Social Security Rule 96-5P "treating source opinions on issues reserved to the Commissioner and are never entitled to controlling weight or special significance", and "must never be ignored." Additionally, an ALJ "must explain the consideration given to the treating source's opinion(s)." *Id.* Here, the ALJ followed this rule by acknowledging PA McKenna's opinion and explaining why he was not giving it any weight. Furthermore, the ALJ's statement on this opinion must not be read out of context. The ALJ had just finished explaining the inconsistencies in PA McKenna's notes, detailing Plaintiff's physical and mental abilities, and

10

describing other provider's assessments. These details reasonably support the ALJ's decision to disagree with this opinion by PA McKenna. Accordingly, the court finds that the ALJ's disregarding of PA McKenna's ultimate-issue-opinion did not violate SSR 69-P5 and satisfies the substantial evidence standard—especially when considered in the appropriate context.

For the foregoing reasons, the court finds that the ALJ did not err in discounting PA McKenna's opinions and that the ALJ sufficiently articulated his reasons for so doing. Thus, the ALJ's findings satisfy the substantial evidence standard and Plaintiff is not entitled to relief on this basis.

### B. Accounting for Plaintiff's Syncope/Seizures

In a rather protracted argument, Plaintiff avers that the ALJ failed to include and explain how the ALJ's RFC finding properly addressed or accommodated Plaintiff's condition. Defendant argues that the ALJ did make such explicit findings. The court agrees with Defendant. The ALJ did find that Plaintiff has "medically determinable impairments [that] could reasonably be expected to cause the alleged symptoms." (ECF No. 20-3 at 16.) But, and this is an important qualifier, the ALJ also found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." (ECF No. 20-3 at 16.) With that qualifier in mind, the court turns to the ALJ's discussion of Plaintiff's RFC and any workplace limitations related to Plaintiff's syncope/seizures.

The ALJ made express and specific findings that address workplace limitations related to Plaintiff's syncope and seizures—remembering that the ALJ disagrees with Plaintiff's statements about the severity, frequency, and persistence of these symptoms. For example, after discussing Plaintiff's syncope, the ALJ states: "giving the [Plaintiff] the benefit of the doubt his syncope

and headaches would limit him to never climbing ladders, ropes, or scaffolds. He must also avoid even moderate exposure to hazards such as machinery and unprotected height and operating a motor vehicle." (ECF No. 20-3 at 16.) Thus, the ALJ did not overlook Plaintiff's syncope. In fact, the ALJ found that the evidence did not support Plaintiff's assertions about the severity, persistence, and intensity of his symptoms and still gave Plaintiff the benefit of the doubt as to those symptoms. After giving Plaintiff the benefit of the doubt, the ALJ then provided reasonable job accommodations and limitations. The court is unsure what more Plaintiff would require from the ALJ.

Accordingly, the court finds that the ALJ properly detailed and explained Plaintiff's RFC and adequately performed the function-by-function assessment to satisfy SSR 96-8p.

## CONCLUSION

For the foregoing reasons, the court DENIES Plaintiff's appeal (ECF No. 24) and AFFIRMS the Commissioner's decision.

DATED this 28th day of January, 2021.

BY THE COURT:

_____
Dale A. Kimball,
United States District Judge